UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

LOWELL W. REED,

    Plaintiff,

vs.                                          Case No.  3:06-cv-536-J-MCR

MICHAEL J. ASTRUE[1], Commissioner of the
Social Security Administration,

    Defendant.
_____/

**MEMORANDUM OPINION AND ORDER[2]**

    This cause is before the Court on Plaintiff's appeal of an administrative decision denying his application for Social Security benefits.  The Court has reviewed the record, the briefs, and the applicable law.  For the reasons set forth herein, the Commissioner's decision is **AFFIRMED**.

**I.    PROCEDURAL HISTORY**

    Plaintiff protectively filed an application for Supplemental Security Income ("SSI") on October 11, 2003 (Tr. 53-55), alleging an inability to work since August 6, 2003.  (Tr. 53, 76).  The Social Security Administration ("SSA") denied the application initially and upon reconsideration.  (Tr. 18-22, 25).  Plaintiff then requested and received a hearing before an Administrative Law Judge (the "ALJ") on November 29, 2005.  (Tr. 32, 40, 96, 227).  On

---

[1] Michael J. Astrue became the Commissioner of Social Security on February 1, 2007.  In accordance with Fed. R. Civ. P. 25(d)(1), Michael J. Astrue should be substituted as Defendant in this litigation.

[2] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  (Doc. 13).

February 7, 2006, the ALJ issued a decision finding Plaintiff not disabled. (Tr. 9-17). Plaintiff filed a Request for Review by the Appeals Council on March 27, 2006 (Tr. 222-23), but the Appeals Council denied the request on May 12, 2006 (Tr. 4). Accordingly, the ALJ's February 7, 2006 decision is the final decision of the Commissioner. Plaintiff timely filed his Complaint in the United States District Court on June 13, 2006. (Doc. 1).

## II.     NATURE OF DISABILITY CLAIM

### A.     Basis of Claimed Disability

Plaintiff claims to be disabled since August 6, 2003 (Tr. 53, 76) due to depression, asthma, bronchitis, pain in the arms, legs, head, and feet (Tr. 22, 76), high blood pressure, and schizophrenia (Tr. 28).

### B.     Summary of Evidence Before the ALJ

On the date the ALJ's decision was issued, Plaintiff was thirty-one years of age (Tr. 229) with a high school education and three years of college (Tr. 80, 231). Plaintiff has past relevant work experience as a maintenance person, laborer, pizza delivery driver, cashier, dishwasher, and housekeeper. (Tr. 61, 77).

#### 1. Plaintiff's Physical Impairments

Because Plaintiff's physical impairments were not raised on appeal, the Court does not discuss them.

#### 2. Plaintiff's Mental Impairments

Plaintiff was first seen for his mental impairments by Dr. Umesh M. Mhatre on January 7, 2003 for a psychiatric evaluation. (Tr. 109). Dr. Mhatre's impressions included questionable history of paranoid schizophrenia and dysthymia. (Tr. 112). Dr. Mhatre ruled

out developmental delays, but noted that further testing might be needed to determine if Plaintiff is developmentally challenged or mentally retarded "because of his repeated problems at school and the difficulty with comprehension during the interview." Id.  Dr. Mhatre also noted Plaintiff's mood was depressed, his affect guarded (Tr. 111), his insight lacking, his social judgment impaired, his concentration marginal, and his conversation coherent, but not spontaneous (Tr. 112).  During the evaluation, Plaintiff was restless, but there was no evidence of pressured speech, flight of ideas, or thought blocking.  (Tr. 111).  Plaintiff came from "a strong family history of Schizophrenia" and was "showing a strong history of depression with paranoia" but showed "no overt hallucinatory behaviors."  (Tr. 112).  Dr. Mhatre noted that Plaintiff had "ideas of reference with delusions of persecutions in the past," but Plaintiff denied having auditory hallucinations.  (Tr. 111).

Dr. Mhatre continued seeing Plaintiff in 2003, 2004, and 2005.  (Tr. 174, 177, 215).  During his September 2003 visit, Plaintiff had the following symptoms: paranoia, depression, worries, crying episodes, significant weight gain, and anger outbursts.  (Tr. 180).  His concentration was fair, his mood depressed, his judgment limited, his fund of knowledge limited, and his thought content too slow.  (Tr. 181).  Dr. Mhatre reported Plaintiff had major depression, paranoia, and a GAF[3] of 40.  (Tr. 182).  Plaintiff admitted that committing suicide had crossed his mind.  (Tr. 180).  On September 25, 2003, Dr. Mhatre noted Plaintiff

---

[3] The Global Assessment of Functioning ("GAF") Scale describes an individual's overall psychological, social, and occupational functioning as a result of mental illness, without including any impaired functioning due to physical or environmental limitations.  Diagnostic and Statistical Manual of Mental Disorders (DSM-IV ) at 32 (4th ed. 1994).  A GAF score of 51-60 indicates moderate symptoms, or moderate difficulty in social or occupational functioning (e.g., few friends, conflicts with peers or co-workers).  Id. at 32.  A GAF score of 41-50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting), OR serious impairment in social or occupational functioning (e.g., no friends, unable to keep a job).  Id.

3

was being treated "for a condition which prevents him from being able to maintain a position of employment." (Tr. 177). Plaintiff's treatment included medication (Tr. 184) and injections (Tr. 183).

Less than two months later, in November 2003, Dr. Mhatre noted that Plaintiff was "asymptomatic," not suicidal or homicidal, that his mood, affect, and depression were much improved, and that he no longer had hallucinations, and was more animated. (Tr. 176). Throughout 2004, Dr. Mhatre noted Plaintiff was doing "fairly good," had no hallucinations or delusions, no clinical depression, only a blunted affect. (Tr. 174-75). In March 2004, Plaintiff remained guarded and Dr. Mhatre noted he needed family help to take his treatment. (Tr. 174). His treatment response remained good in April 2004 (Tr. 172-73) when Dr. Mhatre's notes revealed Plaintiff was oblivious to his surroundings, but otherwise had no major problems (Tr. 173).

Plaintiff's improvement continued as Dr. Mhatre's notes from November 2004 show that Plaintiff was "definitely improved," had better affect, and had no hallucinations. (Tr. 171). Dr. Mhatre's December 2004 report shows only minimal hallucinations and blunted and guarded affect, but overall an adequate treatment response. (Tr. 170). In February 2005, Plaintiff's psychosis was "fairly well controlled" and his treatment response good. (Tr. 169). In March 2005, he showed no overt psychosis and was doing very well as long as he followed his treatment. (Tr. 168). His blunted, guarded affect was consistent with schizophrenia. Id.

The overall improvement and the blunted affect continued through April (Tr. 167), May (Tr. 221), June (Tr. 220), July (Tr. 219), and August 2005 (Tr. 218). In August 2005, Plaintiff reported he was very pleased with the treatment. Id. In September 2005, Plaintiff

was doing even better and his mood was improved. (Tr. 217). In October 2005, he continued to do very well as his psychosis was fairly well controlled. (Tr. 216). Dr. Mhatre's last report in November 2005 shows Plaintiff was "fairly happy and more animated than usual," had no hallucinations or suicidal tendencies, and his treatment response was good. (Tr. 215).

On January 21, 2004, William Himadi, Ph.D., completed a Psychiatric Review Technique that showed Plaintiff had psychotic and dysthymic disorders (Tr. 130-31), mild limitation in the activities of daily living, and moderate limitations in social functioning, concentration, persistence, or pace (Tr. 138). It also showed Plaintiff retained "sufficient adaptive skills for at least simple, routine, repetitive task performing on a sustained basis," and that he could relate to others in a socially-acceptable manner. (Tr. 140).

Dr. Himadi also completed a mental Residual Functional Capacity ("RFC") on January 21, 2004 and it showed depressed mood (Tr. 144) and moderate limitations in Plaintiff's ability to maintain attention and concentration for extended periods (Tr. 142), to complete a normal workday and workweek, to perform at a consistent pace without an unreasonable number and length of rest periods, to maintain socially appropriate behavior, and to adhere to basic standards of neatness and cleanliness (Tr. 143). Dr. Himadi noted that Plaintiff's "concentration and social functioning appear somewhat compromised but retains sufficient adaptive skills for simple, routine, repetitive task performance on a sustained basis." (Tr. 144).

In March 2004, Plaintiff was hospitalized at Shands at Vista and his admission diagnoses were schizophrenia, paranoid type, problems with primary support group and GAF of 15. (Tr. 146). On his discharge, his GAF was 35 and he had poor coping skills. Id.

He was hospitalized because he was Baker Acted.  (Tr. 89).  The medical reports show Plaintiff denied being aggressive, hearing voices, having visual hallucinations or homicidal ideations.  (Tr. 146).  He was observed to be reaching for things that were not there and laughing when nothing was funny.  (Tr. 147).  Plaintiff was guarded, his speech was low, his affect flat (Id.) or impassive (Tr. 156), his mood euthymic (Tr. 157), his judgment poor (Tr. 148, 158), and he had stopped taking his medications (Tr. 148).  At the time of discharge, he was not acutely psychotic, suicidal, or homicidal (Id.) and his condition had improved (Tr. 165).

In May 2004, Dr. Gary Buffone completed a Psychiatric Review Technique on Plaintiff and indicated Plaintiff suffered from schizophrenia and mild limitations in the activities of daily living and moderate limitations in social functioning and concentration, persistence, or pace.  (Tr. 187, 195).  Dr. Buffone noted Plaintiff's behavior was appropriate and alert, his responses coherent, his mood low, his affect appropriate, his concentration intact, his thoughts logical, but his memory both intact and impaired.  (Tr. 197).  Dr. Buffone noted Plaintiff could read and write, care for his child, attend appointments, cook, drive, shop, follow instructions, do chores, relate adequately to family, friends, the public, and authority, and had only moderate limitations.  Id.

Dr. Buffone's Mental Functional Capacity Assessment revealed moderate limitations in Plaintiff's: ability to understand, remember, and carry out detailed instructions; ability to maintain attention and concentration for extended periods (Tr. 200); ability to complete a normal workday and workweek and to perform at a consistent pace without an unreasonable number and length of rest periods; ability to interact appropriately with the general public; ability to respond appropriately to changes in the work setting; and in his

ability to set realistic goals or make plans independently of others (Tr. 201). Dr. Buffone stated that Plaintiff was capable of carrying out routine tasks in a low-stress work setting and he could relate adequately to others on a limited basis. (Tr. 202).

The most recent item of evidence in the record is Dr. Mhatre's April 2006 letter to the Appeals Council. (Tr. 225). This letter was written approximately two months after the ALJ's February 7, 2006 decision, and thus, was not available to the ALJ at the time of the hearing. (Tr. 14-17). In the letter, Dr. Mhatre stated Plaintiff had chronic schizophrenia and dysthymia, would "never function adequately on a normal level," and his mental condition made him "incapable of consistent employment." (Tr. 225). Dr. Mhatre described Plaintiff as "barely functional at times," suffering from hallucinations that are "somewhat controlled, anhedonia, inappropriate behavior, emotional withdrawal and isolation." Id. Dr. Mhatre explained Plaintiff had "marked restrictions in his daily living and social functioning as well as problems with concentration and the ability to stay on task." Id. He further explained that just because Plaintiff could take care of himself and his son "does not mean that he can work on a consistent basis." Id. Dr. Mhatre concluded: "It is my opinion within a reasonable degree of psychiatric medical certainty that Mr. Reed is incapable of maintaining any type of employment on an ongoing basis. It is also my belief that Mr. Reed should meet a listing found at 12.03 in the Listing of Impairments." Id. The Appeals Council considered this letter, but nevertheless, denied review of the ALJ's decision. (Tr. 4-7).

### 3. Summary of Plaintiff's Testimony

Plaintiff alleges he cannot work because of his mental problems. (Tr. 233, 237-38). In November 2003, Plaintiff stated he managed his own money, but he was no longer active in church or other social groups (Tr. 83), that his ability to prepare his meals had changed

7

since his condition began (Tr. 82), that he could concentrate, finish simple jobs, and follow instructions and deadlines (Tr. 85), and that he had not tried to work after he became ill (Tr. 85). He testified he had been treated with shots and medication (Tr. 235) and that failure to take his medication in April 2004 worsened his condition (Tr. 236). He states he cannot complete tasks, has trouble concentrating and sometimes following directions. (Tr. 238). He states he has never heard voices, has no anxiety (Id.), can dress and bathe (Tr. 240), and sometimes helps his aunt with washing the dishes and sweeping the floor (Tr. 239).

Plaintiff states he visits friends, goes to church, watches TV (Tr. 240), and gets along with people well (Tr. 233). He testified that not taking his medication makes him see or hear things (Tr. 242), but, at one point, he did not want to take his medication and lied about taking it (Tr. 246). Plaintiff reported to Dr. Mhatre he washed the dishes, did the laundry, cleaned the house, brought his son home from school, prepared a snack, played basketball, shopped, drove, and fed his fifteen cats and two dogs. (Tr. 111). In June 2004, Plaintiff told the Disability Examiner, Susan Hicks, he was doing much better since seeing Dr. Mhatre regularly and getting treatment, and he no longer had hallucinations or complaints. (Tr. 95).

### C.  Summary of the ALJ's Decision

A plaintiff is entitled to disability benefits when he is unable to engage in a substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months. 20 C.F.R. § 416.905. The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. § 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 20 C.F.R. § 416.920(a)(2)(I). Second, if a claimant does not

have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.  20 C.F.R. § 416.920(a)(2)(ii).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.  20 C.F.R. § 416.920(a)(2)(iii).  Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.  20 C.F.R. § 416.920(a)(2)(iv).  Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.  20 C.F.R. § 416.920(a)(2)(v).  Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

In the instant case, at step one, the ALJ found Plaintiff had not engaged in a substantial gainful activity at any time relevant to the decision.  (Tr. 14).  At step two, the ALJ held Plaintiff had "the following severe impairments: schizophrenia, with a questionable history of paranoid schizophrenia, and fairly well controlled psychosis."  Id.  At step three, the ALJ found Plaintiff did "not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1."  (Tr. 15).

The ALJ determined Plaintiff retained the RFC "to perform work that does not require sustained or prolonged focus for complex mental demands" and Plaintiff "can carry out simple directions and routine tasks in a low-stress structured work setting."  Id.  The ALJ noted that although Plaintiff "may have some difficulty with intense or prolonged social contact . . . he can relate adequately to others on a limited basis."  Id.  At step four, the ALJ

found Plaintiff "capable of performing past relevant work as a dishwasher/kitchen helper in a restaurant" as the "work does not require the performance of work-related activities precluded by [Plaintiff's RFC]".  (Tr. 17).  Thus, without reaching step five, the ALJ found Plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of the decision.  Id.

### III.    ANALYSIS

#### A.    The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – that is, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Foote, 67 F.3d at 1560; accord Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (explaining a

court must scrutinize the entire record to determine reasonableness of factual findings).

**B.    Issue on Appeal**

**Whether the ALJ properly considered Plaintiff's mental impairments.**

Plaintiff argues the ALJ erred by failing to properly consider Plaintiff's mental impairments and specifically, the medical evidence from Plaintiff's treating physician, Dr. Mhatre. (Doc. 26). The Commissioner responds that the ALJ properly considered Plaintiff's mental impairments. (Doc. 28). Moreover, the Commissioner argues the ALJ gave proper weight to Dr. Mhatre's opinion and properly articulated reasons for discounting Dr. Mhatre's statement that Plaintiff could not work. Id.

The ALJ is required to consider all of the evidence in the claimant's record when making a disability determination. See 20 C.F.R. § 416.920(a). In addition, the ALJ must state the weight afforded to the evidence considered. Ryan v. Heckler, 762 F.2d 939, 941 (11th Cir. 1985). Specifically, the ALJ "should state the weight he accords to each item of impairment evidence and the reasons for his decision to accept or reject that evidence." Lucas v. Sullivan, 918 F.2d 1567, 1574 (11th Cir. 1990). Although the ALJ is required to consider all of the evidence, he is not required to discuss all of the evidence presented, but rather "must explain why 'significant probative evidence has been rejected.'" Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

In the present case, the ALJ properly considered all of the evidence in the record, including Dr. Mhatre's opinion. (Tr. 14-17). Importantly, the ALJ did not wholly discount Dr. Mhatre's opinion. Id. Rather, he merely discounted Dr. Mhatre's September 25, 2003 statement that Plaintiff was being treated "for a condition which prevents him from being

able to maintain a position of employment." (Tr. 16). The ALJ stated he gave more weight to the opinions of the State Agency medical consultants than he did to Dr. Mhatre's aforementioned statement, as he found the consultants' assessments more credible. (Tr. 17). Notably, he expressly stated he did not accept Dr. Mhatre's September 25, 2003 statement because it was contrary to Dr. Mhatre's treatment records. (Tr. 16).

Although the ALJ should generally give more weight to a treating physician's opinion than to a consulting physician's opinion, Wilson v. Heckler, 734 F.2d 513, 518 (11th Cir. 1984) (citing Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. 1981)); Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986); Sabo v. Chater, 955 F. Supp. 1456, 1462 (M.D. Fla. 1996), the ALJ "may choose to reject the opinion of a treating physician while accepting the opinion of a consulting physician" when the ALJ can demonstrate "good cause" for his or her decision, Gholston v. Barnhart, 347 F. Supp. 2d 1108, 1114 (M.D. Ala. 2003). See also Wilson v. Heckler, 734 F.2d 513, 518 (11th Cir. 1984) (stating "the ALJ may reject a treating doctor's opinion when it is contrary to the evidence . . . and [a]n acceptable medical opinion as to disability must contain more than a mere conclusory statement that the claimant is disabled," rather, "[i]t must be supported by clinical or laboratory findings").

In the instant case, the ALJ showed good cause for rejecting Dr. Mhatre's September 25, 2003 statement, namely, its inconsistency with Dr. Mhatre's treatment records. (Tr. 16). Dr. Mhatre's statement that Plaintiff was being treated "for a condition which prevents him from being able to maintain a position of employment" (Tr. 177) is conclusory and unsupported by the totality of the medical evidence. The record shows Plaintiff's mental problems were most severe through September 2003 which is exactly when Dr. Mhatre

12

stated Plaintiff could not work. Id. However, less than two months after Dr. Mhatre's September 2003 statement, Dr. Mhatre noted Plaintiff was "asymptomatic," his mood, affect, and depression were much improved, he no longer had hallucinations, and he was no longer suicidal or homicidal. (Tr. 176). Plaintiff's improvement continued in 2004 and 2005, although his affect remained blunted for some time. (Tr. 167-68, 170, 174-75, 218-21). Thus, Dr. Mhatre's September 2003 statement did not reflect Plaintiff's subsequent improvement.

Plaintiff also argues, however, that the ALJ erred by failing to consider the record as a whole (Doc. 26, p. 8), supporting his position by referring to Dr. Mhatre's statements included in the April 3, 2006 letter (Doc. 26, p. 7). In the letter, Dr. Mhatre concluded Plaintiff would "never function adequately on a normal level," that he is "barely functional at times," that his hallucinations are "somewhat controlled," and that Plaintiff had "marked restrictions in his daily living and social functioning as well as problems with concentration and the ability to stay on task." (Tr. 225). As previously mentioned, Dr. Mhatre's April 3, 2006 letter (Tr. 225-26) was not considered by the ALJ because it was written approximately two months after the ALJ's February 7, 2006 decision (Tr. 14-17). As the Commissioner correctly points out (Doc. 28, p. 9), this Court need not consider the letter because Plaintiff does not argue the evidence satisfies the criteria for remand pursuant to sentence six of 42 U.S.C. § 405(g).[4] See Falge v. Apfel, 150 F.3d 1320, 1323 (11th Cir. 1998) (concluding that in cases where the Appeals Council has denied review, a reviewing

---

[4] Section 405(g) states in pertinent part that additional evidence may be presented only if it is new and material and if "there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g).

court should review only evidence actually presented to the ALJ); Keaton v. Dep't of Health & Human Servs., 21 F.3d 1064, 1067-68 (11th Cir. 1994) (explaining that under 42 U.S.C. § 405(g), new evidence may be considered if it is material and good cause exists for failure to present it to the ALJ).  Rather, Plaintiff only argues the ALJ "had a duty to weigh all of the evidence from Dr. Mhatre with specificity."  (Doc. 26, p. 7).

Even assuming the April 2006 letter is admissible for review, the statements included therein are not consistent with Dr. Mhatre's own treatment reports which show Plaintiff's improvement since November 2003 (Tr. 176).  Dr. Mhatre's records specifically show Plaintiff was "asymptomatic" (Id.), was doing "fairly good" (Tr. 174-75), was "definitely improved" (Tr. 171), had no hallucinations (Tr. 171, 174-75, 215), had no overt psychosis, and was doing very well as long as he followed his treatment (Tr. 168).

The State Agency consultants' opinions are also consistent with Dr. Mhatre's treatment records.  In fact, Dr. Himadi's Psychiatric Review Technique supports Dr. Mhatre's treatment records by showing that despite his psychotic disorder (Tr. 130-31), Plaintiff's limitations were only mild or moderate (Tr. 138) and did not prevent him from performing simple repetitive tasks (Tr. 140, 144).  Further, Dr. Buffone's assessment was consistent with Dr. Himadi's opinion by showing only mild or moderate limitations in Plaintiff's functional abilities.  (Tr. 187, 195, 200).  Dr. Buffone noted Plaintiff was "capable of carrying out simple directions/routine tasks . . . in a low-stress structured work setting."  (Tr. 202).

In addition, even if this Court were to find Dr. Mhatre's April 2006 letter admissible, his statements that Plaintiff is "incapable of consistent employment," "incapable of maintaining any type of employment on an ongoing basis," and that Plaintiff "should meet a

listing found at 12.03 in the Listing of Impairments" (Tr. 225) are conclusory and reserved to the Commissioner. See 20 C.F.R. § 416.927(e) (specifying which opinions are reserved to the Commissioner). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986); Schnor v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987). As discussed above, Dr. Mhatre's statements are not supported by clinical or laboratory findings, and the ALJ properly found Dr. Mhatre's opinion that Plaintiff was incapable of working was not supported by the medical evidence.

Moreover, Dr. Mhatre's September 25, 2003 and April 3, 2006 statements were not consistent with Plaintiff's own statements and activities of daily living. (Tr. 83, 85, 95, 111, 233, 239-40). Plaintiff's own statements, although sometimes internally inconsistent (Tr. 85, 238), show that he can manage his own money (Tr. 83), finish simple jobs (Tr. 85), dress, bathe (Tr. 240), help with chores – such as washing dishes and sweeping the floor (Tr. 239), visit friends, watch TV (Tr. 240), get along with people (Tr. 233), care for his son, play basketball, shop, drive, and feed his many pets (Tr. 111). Plaintiff reported that his condition worsens when he does not take his medication and that he had previously lied about taking it. (Tr. 242, 246). Both Plaintiff and his aunt agreed that as long as he gets his injection once a month, he does very well, as shown by Dr. Mhatre's notes from March 2005. (Tr. 168).

Finally, Plaintiff contends that his impairment meets or equals section 12.03 of the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, but he does not present any support for his position. (Doc. 26). The Commissioner correctly points out that

Plaintiff's cursory argument need not be addressed. See Rowe v. Schreiber, 139 F.3d 1381, 1382 n.1 (11th Cir. 1998) (noting that in the absence of an argument, the issue is deemed abandoned) (citing Marek v. Singletary, 62 F.3d 1295, 1298 n.2 (11th Cir. 1995) ("Issues not clearly raised in the briefs are considered abandoned.")); NLRB v. McClain of Georgia, Inc., 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived.") (citing Cont'l Technical Servs., Inc. v. Rockwell Int'l Corp., 927 F.2d 1198, 1199 (11th Cir. 1991) (finding that a simple contention without citation to authority waives the issue)).

Nevertheless, assuming *arguendo* that Plaintiff had made a valid argument, Plaintiff's impairment still would not meet or equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.03. (Tr. 15). Plaintiff cannot meet the "A" and "B" criteria, because the evidence fails to show he has "marked" functional limitations and repeated episodes of decompensation, each of extended duration. Plaintiff also cannot meet the "C" criteria, because the record does not show Plaintiff experiences "marginal adjustment" or "inability to function outside a highly supportive living arrangement." 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.03. On the contrary, the record shows Plaintiff's limitations in social functioning are moderate (Tr. 138, 143-44, 187, 195) and he relates well to others on a limited basis (Tr. 140, 202).

### IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is hereby **AFFIRMED**. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this  19th  day of June, 2007.

*Monte C. Richardson*
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record